UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NOEL DIAZ,

                Plaintiff,

-against-

MOSES DIVISION HOSPITAL EMERGENCY
DEPARTMENT, JON DOE, JANE DOE, and
JAMES DOE,

                Defendants.

24-CV-8607 (KMW)

ORDER OF DISMISSAL

---

KIMBA M. WOOD, United States District Judge:

    Plaintiff, appearing *pro se*, brings this action against Montefiore Hospital's Moses Division Emergency Department and three unidentified individual employees. Plaintiff alleges that Defendants violated his constitutional rights under the First and Eighth Amendments by failing to arrange his transportation from the hospital to vote in the 2024 United States presidential election. By Order dated November 21, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. (ECF No. 5.) For the reasons set forth below, the Court dismisses the complaint.

**STANDARD OF REVIEW**

    The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction over the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

Although the law mandates dismissal on any of these grounds, the Court is obligated to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" courts provide to *pro se* litigants, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true, but it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 678.

## BACKGROUND

The following facts are drawn from the complaint.[1] (ECF No. 1.) On November 5, 2024, the date of the general presidential election, Plaintiff was receiving unspecified medical

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation appear as in the complaint, unless noted otherwise.

care at Montefiore Hospital's Moses Division Emergency Department. Plaintiff asked to be released in order to cast his vote in the election. (*Id.* at 5.) Plaintiff "spoke to the Doctor and she told [hospital employees] 4 hours earlier get him out t[o] discharge so [he] can vote." (*Id.*) Plaintiff asserts that his "lifelong dream [was to] finally vote for someone [he] looked up to" and he expressed this dream to hospital employees. (*Id.* at 5-6.) The employees heard Plaintiff "watching FOX News[,]" and "disobeyed the doctor's orders and blocked and hindered" him from "expressing [his] constitutional right" to vote by telling him a cab would "be there soon" when in fact, one was not coming. (*Id.*) Because hospital employees did not timely arrange the promised transportation, Plaintiff missed his opportunity to vote in the election and suffered physical and "mental anguish" as a result. (*Id.* at 6.)

Plaintiff brings claims for alleged violations of his rights under the First and Eighth Amendments to the U.S. Constitution. (*Id.* at 2.) He seeks a preliminary injunction to grant him the right to vote and have it counted, and seeks $1.5 million in compensatory damages and $1.1 million in punitive damages. (*Id.* at 6.)

## DISCUSSION

A.   **Section 1983 Claims Against Private Parties**

Because Plaintiff asserts that Defendants violated his constitutional rights, the Court construes the complaint as bringing claims under 42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege that: (1) a right secured by the Constitution and laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988).

A Section 1983 claim must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. Private parties

are therefore generally not liable under Section 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (per curiam) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Plaintiff brings this action against Montefiore Hospital, a private entity, and three of its employees. When analyzing whether a private entity functions as a state actor under Section 1983, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (internal quotation marks and citation omitted). The activity of a private entity may be considered state action: (1) when the entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) when the state provides significant encouragement to the entity, the entity willfully participates in joint activity with the state, or the entity's functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) when the state has delegated a public function to the entity (the "public function test"). *See id.* (citation omitted). The fundamental question under each test is whether the private entity's challenged actions are "fairly attributable" to the state. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

The fact that an entity receives public funds does not turn private action into state action, and the acts of private contractors do not become acts of the government simply because the contractors are performing government contracts. *See Rendell-Baker*, 457 U.S. at 840-41. Furthermore, a private entity does not become a state actor merely by acting in accordance with state regulations. *See id.* at 841; *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) ("Action taken by private entities with the mere approval or acquiescence of the State is not state

4

action.").

Plaintiff challenges Montefiore's actions in failing to timely arrange transportation after providing healthcare to him as a private, nonincarcerated individual. These actions are not attributable to the state because they do not satisfy any of the tests for state action. *See, e.g.*, *Cheeks v. Montefiore Med. Ctr.*, No. 23-CV-2170, 2023 WL 8235755, at *1 (S.D.N.Y. Nov. 28, 2023) (Furman, J.) ("Absent an action 'fairly attributable to the state,' . . . Montefiore, as a private hospital, is not a state actor for purposes of Section 1983 or the First Amendment[.]"); *Antwi v. Montefiore Med. Ctr.*, No. 14-CV-840, 2014 WL 6481996, at *5 (S.D.N.Y. Nov. 18, 2014) (Ramos, J.) ("[I]t is well-settled in the Second Circuit that a private hospital confining a patient . . . is not acting under color of state law"); *id.* at *6 ("In numerous § 1983 cases involving private hospitals and health care professionals, Southern District courts have found that none of the three tests for state action-"state compulsion," "public function," and "close nexus"-are satisfied.").[2]

Because Montefiore and its employees are private parties who were not engaged in state action, Plaintiff fails to state a claim against them under Section 1983. The Court therefore dismisses Plaintiff's Section 1983 claims, alleging violations of his First and Eighth Amendment rights, for failure to state a claim on which relief may be granted.[3] *See* 28 U.S.C.

---

[2] Private hospitals or doctors can be deemed state actors in certain situations. *See, e.g.*, *West*, 487 U.S. at 54-56 (holding that private physicians, contracted by the state of North Carolina to provide medical care to state prisoners, were state actors because North Carolina had delegated its inmate medical care function to those physicians).

[3] The Court also dismisses Plaintiff's complaint on the ground that the Eighth Amendment applies only to convicted prisoners. *See Strano v. City of New York*, No. 97-CV-387, 1998 WL 338097, at *2 n.3 (S.D.N.Y. June 24, 1998) (Patterson, J.) ("[T]he Eighth Amendment only applies to convicted prisoners." (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Because Plaintiff has not alleged that he was a convicted prisoner or in any type of custody at the time of the events giving rise to his claims, the Eighth Amendment does not apply.

§ 1915(e)(2)(B)(ii).

**B.     Interference With Voting Rights**

Plaintiff alleges that on the last day of voting in the general presidential election, Defendants misled him into believing that transportation would be arriving, causing him to miss his opportunity to vote. Plaintiff states that hospital employees heard him watching "FOX News," potentially implying that Defendants misled him about his transportation based on their presumptions about his choice of candidate.

Plaintiff has not invoked any voting rights statute, and his allegations do not assert a viable claim under any federal voting rights statute. Nothing in the complaint suggests that Plaintiff was in custody, forcibly detained or committed, or in any similar situation that would impose responsibility on his custodian to facilitate voting. *See, e.g.*, N.Y. Elec. Law § 8-407 (governing voting by residents of nursing homes and residential health care facilities).[4]

In addition, there are numerous federal civil and criminal statutes that govern interference with voting rights.[5] Plaintiff has not alleged that Defendants violated any of these federal statutes prohibiting interference with voting. The facts alleged in the complaint—delay or failure to arrange transportation for Plaintiff—do not suggest that anyone "intimidate[d], threaten[ed],

---

[4] A claim under New York's election law would also not provide any basis for this Court's exercise of subject matter jurisdiction over this action, and the Court declines below to exercise supplemental jurisdiction of any state law claims.

[5] The Voting Rights Act of 1965 (VRA), 52 U.S.C. §§ 10301-10314, 10501-10508, and 10701-10702, prohibits racial discrimination in voting, and Section 11(b) of the VRA, 52 U.S.C. § 10307(b), prohibits intimidating or threatening any person for voting or assisting others to vote. In addition, Section 12 of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20511(1)(A), makes it illegal to intimidate or threaten any person for registering or voting in federal elections. Several criminal statutes also prohibit intimidating or threatening a person to interfere with their right to vote in federal elections. *See, e.g.*, 18 U.S.C. § 594; 18 U.S.C. § 241 (making it unlawful to conspire to injure, oppress, threaten, or intimidate a person for exercising rights secured by the Constitution).

or coerce[d]" Plaintiff to interfere with his efforts to vote. *See* 52 U.S.C. § 10307(b). Plaintiff's allegation that Defendants attempted to mislead him in order to deter his specific vote is speculative and unsupported by the facts in the complaint. Plaintiff thus fails to state a claim under any federal voting rights statute the Court has identified.

In addition, as a private party, Plaintiff cannot pursue criminal charges under Section 12 of the NVRA or 18 U.S.C. §§ 241, 594. *See Leeke v. Timmerman*, 454 U.S. 83, 87 (1981); *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972) (prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court").

## C. Conspiracy Claim Under 42 U.S.C. § 1985(3)

Plaintiff's allegations that Defendants caused him to miss his opportunity to vote in a federal election may also be liberally construed as arising under 42 U.S.C. § 1985, for conspiracy to interfere with civil rights. Subsection (3) of that statute provides, in relevant part:

> [I]f two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To state a civil rights conspiracy under Section 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006). In addition, Section 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

7

conspirators' action." *Kush v. Rutledge,* 460 U.S. 719, 726 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Plaintiff does not plead any facts about his race or offer any facts that could give rise to an inference of racial or other "class-based invidiously discriminatory animus[.]" *Kush,* 460 U.S. at 726. Plaintiff also does not allege any facts suggesting that Defendants had any meeting of the minds or a "tacit understanding to carry out the prohibited conduct." *See LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (citation omitted). Plaintiff's allegations thus do not state a claim for conspiracy to violate civil rights, and the Court dismisses his claim under Section 1985(3) for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### D.     Supplemental State Law Claims

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted); *see also Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (holding that once the district court has dismissed all claims over which it has original jurisdiction, "although supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court.").

Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by

8

enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### E.      Leave To Amend Is Denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Because Plaintiff cannot cure the defects in his complaint with an amendment, the Court declines to grant Plaintiff leave to amend.

## CONCLUSION

The Court dismisses Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

Dated:   July 21, 2025
         New York, New York

                                            /s/ Kimba M. Wood
                                         KIMBA M. WOOD
                                       United States District Judge